**John T. Fetters** (OSB No. 141971)
*John.Fetters@stokeslaw.com*
**Theresa H. Wang** (*pro hac vice*)
*Theresa.Wang@stokeslaw.com*
**Bradford J. Axel** (*pro hac vice*)
Bradford.Axel@stokeslaw.com
**Joshua D. Harms** (*pro hac vice*)
*Joshua.Harms@stokeslaw.com*
**Valerie A. Walker** *(pro hac vice)*
*Valerie.Walker@stokeslaw.com*
**Stokes Lawrence, P.S.**
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Telephone: 206-626-6000

Attorneys for Plaintiffs Rocket Software, Inc. and Rocket Software B.V.

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| ROCKET SOFTWARE, INC., a Delaware corporation and ROCKET SOFTWARE B.V., a Netherlands private limited company, <br><br> Plaintiffs, <br><br> v. <br><br> COLLEGENET INC., a Delaware corporation, <br><br> Defendant. | Case No.: 3:22-cv-00327-AR <br><br> ROCKET SOFTWARE, INC. AND ROCKET SOFTWARE B.V.'S TRIAL MEMORANDA |

Pursuant to the Court's Civil Jury Trial Management Order (Dkt. 130). Plaintiffs Rocket Software, Inc. and Rocket Software B.V., successors-in-interest to Uniface Corporation B.V., (collectively, "Uniface"), hereby submit the following Trial Brief.

## I.  INTRODUCTION

This case arises out of a software license agreement giving CollegeNET, Inc. ("CollegeNET") permission to incorporate Uniface Software into CollegeNET's own applications

and then license the combined software to CollegeNET's customers. In exchange, CollegeNET promised to pay Uniface two fees: royalties and support, both to be calculated as a percentage of the fees CollegeNET charged its own customers. The royalty was the higher of the two and only applied to the license fees that CollegeNET charged its customers. As it turns out, for years, CollegeNET reported a large percentage of its license fees as support (or service) fees. By doing so, CollegeNET avoided paying royalties, and it reaped the benefits of this windfall—from 2017-2019, CollegeNET made $35 million in revenue using Uniface's software as the core of CollegeNET's own software—of that amount, it paid Rocket only $879,000, or around 2.5%.

This may never have come to light because, for more than twenty years, Uniface took CollegeNET's representations at face value. In 2017, Uniface's own financial auditor recommended that it begin auditing its customers, and in 2019, Uniface exercised its contractual right to audit CollegeNET's books and records. That audit included a review of CollegeNET's customer contracts. And that review exposed that CollegeNET had misreported license fees as support fees. Specifically, CollegeNET had told Uniface for many years that its initial fees were license fees, and that its quarterly fees were support or "maintenance" fees. The audit revealed that to be false.

Uniface will ask the jury to return a verdict in its favor for judgment on all liability issues related to CollegeNET's breach of contract. Uniface will ask the jury to award damages for breach of contract in the amount of approximately $3.3 million in unpaid fees.

Uniface also will ask the jury to return a verdict in its favor and against CollegeNET on its affirmative defenses. CollegeNET's affirmative defenses seek to excuse its breaches of contract. But their defenses are based on misinterpretations of the contract and the parties' correspondence

over the years, and the laches and unclean hands defenses are equitable and not applicable to the breach of contract claims, which seek monetary damages only.

Finally, Uniface will ask the Court to determine that Uniface is the prevailing party on its claim for breach of contract, and that CollegeNET must pay all attorneys' fees incurred by Uniface from the inception of this lawsuit pursuant to the terms of the licensing agreement, along with applicable pre-judgment and post-judgment interest, and awardable costs.

## II.  STATEMENT OF FACTS

### A. Uniface Licenses its Software for Value-Added Resellers to Incorporate into Their Own Products, in Exchange for Royalty Fees Paid to Uniface

The jury will hear from Uniface's Vice President of Worldwide Sales Deniz Yugnuk about Uniface, Rocket's predecessor-in-interest, and about the software at issue in this case ("Uniface Software"). The Uniface Software was originally developed in the mid-1980s by the Dutch company Uniface B.V. Companies around the globe use Uniface Software as a platform to develop and deploy enterprise software capable of running on a wide range of applications. Over the past 40 years, Uniface Software has been licensed by thousands of companies around the world and incorporated into over 3,000 applications. Value-added resellers ("VARs") are Uniface licensees who develop their own software using the Uniface platform and license the combined software ("VAR Application Software") to the VAR's customers. As discussed more fully below, CollegeNET was a Uniface VAR from June 1994 through December 2020 ("Value-Added Reseller Agreements," collectively referred to herein as "VARA").

### B. CollegeNET and Uniface Enter into the Value-Added Reseller Agreement ("VARA")

In 1994, Uniface and CollegeNET entered into a Standard Value-Added Reseller Agreement ("VARA"). Under the VARA, Uniface granted CollegeNET a nonexclusive license to

sublicense copies of Uniface software. In return, CollegeNET promised to pay Uniface both Royalty and Support Fees.

The jury will hear from CollegeNET witnesses, both live and via deposition designation, about CollegeNET  building its own software using the Uniface platform and selling that combined product to CollegeNET's customers. CollegeNET issued quarterly reports to Uniface, showing the royalty fee as applied to a "Basic Fee" charged to its customers, and a lower percentage calculated against an annual "Service Fee.".

Over time, the parties extended the term of the VARA multiple times, changing some of the language and applicable rates. The parties executed a final amendment in February 2018 ("2018 Amendment"). Before signing, CollegeNET and Uniface negotiated the term (3 years) as well as the new Royalty and Annual Maintenance rates (9% and 2% respectively). The jury will hear about the communications between Uniface's sales representative, Isabella Kostuvosky appearing by deposition designation, and CollegeNET's witness, Ed Trachtenbarg, discussing the terms of the amendment, leading to its execution. Based on CollegeNET's representations about how it billed its customers for license fees and maintenance fees, Uniface agreed to a 9% royalty rate on license fees and a 2% rate on CollegeNET's maintenance/support fees. Underlying the concession was the assumption that CollegeNET was telling the truth, and that CollegeNET's quarterly invoices to customers were in fact for maintenance only and not part of the license sold to CollegeNET customers.

C.    **Uniface Initiates the KPMG Audit of CollegeNET Pursuant to the VARA**

In November 2019, Uniface exercised its contractual right to initiate an audit of CollegeNET, which was completed in mid-2021, with the outside auditor, KPMG, issuing a final audit report in July 2021. The jury will hear from Els Oirbans, Uniface's Senior Director, Sales, and from CollegeNET witnesses, Mr. Trachtenbarg and Penny Love, about working with KPMG

during the audit. After reviewing those contracts as well as CollegeNET's general ledger, Uniface discovered that CollegeNET's Initial Fees and its Quarterly Fees were for the same thing, licensing. By falsely classifying the amounts that CollegeNET invoiced for Quarterly Fees as "maintenance," CollegeNET enriched itself by paying only 2% to Uniface instead of the required 9% royalty for licensing.

During discovery, CollegeNET produced roughly two dozen examples of its customer contracts. Those contracts confirmed that both CollegeNET's Initial Fee and Quarterly Fees were charged for access and use of the licensed software, and not specifically for maintenance and support services, as CollegeNET had represented to Uniface, a fact that will be confirmed at trial by Mr. Trachtenbarg and corporate witnesses appearing by deposition designation. Although CollegeNET continues to call its quarterly fees service fees, CollegeNET witnesses will have to admit that if payment of the service fees stopped, then the right to access and use the software stopped, meaning the fees function as licensing fees.

**D.    CollegeNET Refuses to Pay Underpaid Royalty Fees to Uniface**

CollegeNET refuses to acknowledge that its initial and quarterly fees as charged to CollegeNET customers were, in fact, both license fees for which it owes 9% royalty fees to Uniface. Instead, CollegeNET argues that Uniface knew CollegeNET sold its applications on a "Software as a Service" ("SaaS") model, wrongly suggesting that this issue is determinative of whether CollegeNET properly reported and paid all required fees to Uniface. In reality, CollegeNET's arguments related to when it transitioned to a SaaS model and when, if ever, Uniface was aware of this, is a red herring. The delivery method of CollegeNET's software makes no difference to the amount of royalties for licensing that CollegeNET owes to Uniface under the VARA.

In other words, it does not matter whether Uniface knew or did not know the way that CollegeNET deployed its software to its own customers—what mattered is that the "quarterly fees" reported by CollegeNET to Uniface as support and maintenance fees only were, in fact, license fees only, subject to the 9% royalty rate, not the lower 2% rate for support and maintenance.

Dr. Robert Kursh, Uniface's expert regarding standard industry customs and practices, will testify as that CollegeNET's "service" fees were, in fact, licensing fees subject to the higher royalty rate. Christian Tregillis, Uniface's damages expert, will testify as to his analysis and opinions regarding the calculation of Uniface's damages based on the express language of the parties' contracts, as supported by his professional experience in the software industry and as an accountant and financial expert.

### III.  ISSUES TO BE RESOLVED AT TRIAL

To establish a breach of contract under California law, Uniface must prove that: (i) the parties had a valid contract; (ii) Uniface performed its contractual obligations; (iii) CollegeNET breached one or more of its contractual promises; and (iv) Uniface was injured by the breach. *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830, 442 P.2d 377, 381 (1968). Here, the first two elements are not disputed. The VARA was a valid contract that governed the parties' relationship for more than 20 years. There is also no dispute that Uniface performed its obligations of providing CollegeNET with access to the Uniface Software as well as maintenance and support services. CollegeNET has not alleged a breach of either obligation.

As for the final two elements (breach and injury), the dispute is whether CollegeNET underpaid royalties by misclassifying license fees as support fees. At trial, CollegeNET will make much of three or so marketing documents from earlier years where Uniface features CollegeNET's work on transitioning some products to the cloud or a migration to SaaS. These documents do not change the words of a contract: CollegeNET agree to pay a 9% royalty fee for licensing and a 2%

fee for support. CollegeNET breached the agreement because it improperly reported licensing fees as support fees and underpaid Uniface for licensing at the lower 2% rate.

To assist the jury in making this determination, in addition to the witnesses that will testify about the facts above, Uniface's expert on custom and practice in the software industry will shed light on the proper characterization of CollegeNET's fees charged to CollegeNET's customers. Dr. Kursh will assist the jury in distinguishing between a license fee and a support (or maintenance) fee and describe the difference between a software license and maintenance services, and CollegeNET's witnesses will confirm that they consider a license fee as a payment for the right to access and use the software, while maintenance or support fees are ancillary and subordinate to the right to use the product.

The final element of a contract claim is a showing an injury caused by the breach. As previously stated, here, the fact of injury flows directly from the breach, which is the underreporting and underpayment of royalties by CollegeNET. By reporting quarterly or annual fees as maintenance fees instead of license fees, CollegeNET paid Uniface 2% of its billings instead of the required 9%. Uniface's damages expert, Mr. Tregillis, will testify regarding the proper measure of damages for CollegeNET's underpayment of royalties.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully submitted that Uniface should prevail on its claim against CollegeNET in its entirety, and CollegeNET's affirmative defenses are unsupported.

//

//

///

DATED this 17th day of April 2026.

STOKES LAWRENCE, P.S.


By: */s/ John T. Fetters*
John T. Fetters (OSB No. 141971)
Theresa H. Wang (*pro hac vice*)
Bradford J. Axel (*pro hac vice*)
Joshua D. Harms (*pro hac vice*)
Valerie A. Walker (*pro hac vice*)
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Telephone:  206-626-6000
Facsimile:  206-464-1496
John.Fetters@stokeslaw.com
Theresa.Wang@stokeslaw.com
Bradford.Axel@stokeslaw.com
Joshua.Harms@stokeslaw.com
Valerie.Walker@stokeslaw.com

Attorneys for Rocket Software, Inc., Rocket
Software B.V.